Appellant, Elgin Garrett, is appealing his convictions for three counts of forcible rape of a person under the age of thirteen and one count of gross sexual imposition. For the following reasons, we affirm.
Appellant moved to appoint a medical expert, Dr. Robert Fay, to evaluate the opinion of the State's medical expert. The motion was granted, limited to $500. Appellant moved to have the tab on Dr. Fay extended to $1,500, which was granted. The defense did not present Dr. Fay as a witness.
Appellant moved to appoint a psychological expert, Dr. Sandra Mcpherson, to examine the victim and determine whether the victim displayed the symptoms of child sexual abuse accommodation syndrome. The prosecutor said there would be no testimony concerning this syndrome. The judge overruled the motion with respect to child sexual abuse accommodation syndrome.
Appellant stated that Dr. McPherson was also needed to testify as to the proper procedures for interviewing an allegedly abused child. The judge reserved her ruling. The journal entry stated that appellant's motion for the appointment of Dr. McPherson was denied. Just before trial, appellant renewed his motion to have Dr. Mcpherson testify concerning interviewing techniques, and to have the child examined by Dr. McPherson. The court denied the motion.
Jessica Anne DeLuze testified that she is the grandmother of the victim, Nadia DeLuze. In April of 1997, the victim's mother, Lisa, gave Jessica custody of her four children for two years. At the time, Jessica resided in Tennessee. On July 4, 1997, Jessica and three of the children visited Lisa in Cleveland. They did not see appellant on the July 4th trip. Jessica was not fond of appellant.
They returned to Tennessee. The next week, the children were in the backseat bickering. Jessica told Nadia to move up to the front seat. Nadia told her something. Jessica took Nadia to the Department of Human Services. Nadia was interviewed alone by Mrs. Hagy. Then, Jessica took Nadia to see Dr. Ford. Jessica was not present when the doctor initially interviewed Nadia.
Dr. Ronald Ford testified that he is a pediatrician and the director of the Special Attention Clinic for Childhood Sexual Abuse at East Tennessee Children's Hospital. Dr. Ford interviewed Nadia alone. Dr. Ford started with general questions, asking why Nadia came to the clinic. Nadia said, "Elgin got on top of me and humped me." Dr. Ford asked if she could explain what happened in the encounters with Elgin. Nadia said, "Elgin took his penis out once and put it in my mouth. Something like puss came out of Elgin's penis." On more than one occasion, he put his penis in her privates. He also put his tongue on her privates. Elgin made her touch his privates and his behind. The encounters did not cause any physical pain.
Upon physically examining Nadia, Dr. Ford noticed that everything seemed normal except for a hymenal concavity. The concavity can be the result of healing after trauma, or be present at birth.
Appellant cross-examined Dr. Ford concerning the literature on the proper protocol for interviewing allegedly abused children.
Claudia Kirby, a licensed social worker, testified that she treated Nadia for major depressive disorder. Nadia told her that Elgin put his thing in her mouth. Elgin got on top of her and took off her clothes. Kirby prepared Nadia for trial.
Nadia testified that after July 4, 1997, she was talking to her grandmother in the van. Her grandmother asked her if Elgin stuck his penis in her. Her grandma was the first one to bring up Elgin. Nadia changed her testimony and said that she was the one who first said that Elgin had been assaulting her. She told her grandmother because she didn't want to worry anymore. She did not tell anyone before because she was afraid of being hit by Elgin. She was afraid of Elgin, because she saw Elgin beat her mother.
The first time it happened was when she was seven. Elgin put his penis in her mouth, and a puss-like substance came out. On at least two occasions, Elgin put his penis inside her privates. Another time, he put his penis on top of her privates. He made her put her hand and mouth on his penis. Another time he put his tongue on her private parts. The incidents happened when her mother was not at home. It hurt sometimes, but not all the time. There were a total of eighteen incidents.
Nadia admitted that she told Mrs. Hagy that the last time it happened was when she was seven. Nadia said she did not mean to say that, because it happened until she was nine.
Rosetta Dalton, the payroll officer of Sunset Nursing Home, testified that Nadia's mother worked there part-time from 1990 to 1995.
Seanine Cook testified that she was the case worker for the DeLuze family. On several occasions, she could not complete a home visit because Lisa DeLuze was working.
Detective Sherylin Howard of the Cleveland Police testified that she interviewed the defendant. He denied raping or molesting Nadia. He did not see the children on July 4, 1997.
Melissa Hastings-Hawthorne of the Department of Family and Children's Services testified that she interviewed appellant. He said that he saw the children on July 4, 1997, and Nadia was happy to see him. He believed Nadia invented the allegations because she did not like following the rules of the house.
Lisa DeLuze, Nadia's mother, testified that when Nadia was five, she saw Nadia giving her three year old sister oral sex. She did not know appellant when Nadia was five. Nadia would watch the Playboy channel, but they did not get it until Nadia was nine. Lisa only worked for seven months. She had a woman babysit when she was working. Elgin babysat sometimes when she would clean a woman's house.
Elgin Garrett testified that he did not rape or molest Nadia. He did not see Nadia on July 4, 1997. He did not tell the social worker that Nadia made up the allegations because she did not want to follow the rules. Nadia made up the allegations because she was angry she had to live with her grandmother. Appellant believed the grandmother was coaching Nadia.
 I.
Appellant's first assignment of error states:
 THE TRIAL COURT ERRED BY DENYING DEFENDANT-APPELLANT'S REQUEST FOR THE STATE TO PROVIDE HIM AN EXPERT AND FURTHER DENYING HIS REQUEST TO HAVE HIS EXPERT ATTEND TRIAL.
Appellant's motion to appoint Dr. Fay as an expert was granted, so there can be no error concerning Dr. Fay. We must consider whether the trial court erred in declining to appoint Dr. McPherson, the psychological expert.
 [D]ue process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial.
State v. Mason (1998), 82 Ohio St.3d 144, 150; see also State v.Weeks (1989), 64 Ohio App.3d 595, 598. Appellant did not make a particularized showing that a psychiatrist's testimony concerning the interviewing techniques would have aided his defense. See Mason,supra. There was no showing that any of the interviewing techniques used by Dr. Ford or the social workers were contrary to proper protocol. Appellant only demonstrated a possibility an expert would be helpful, not a probability. See Id. The trial court did not abuse its discretion in refusing to appoint Dr. McPherson to review the interviewing techniques. See Id.; State v. Asberry (1989),64 Ohio App.3d 314, 320; State v. Jenkins, 15 Ohio St.3d 164, 193.
Appellant also requested a psychological expert in order to evaluate whether the victim displayed symptoms of child abuse accommodation syndrome.
 The decision whether to order a psychological evaluation of a prosecutor's witness is within the sound discretion of the trial court. Moreover, "a request to subject an alleged sex abuse victim to a psychological examination seeks an extraordinary order from the court and should not be granted lightly."
State v. Ramirez (1994), 98 Ohio App.3d 388, 391 quoting State v.Stutts (Jan. 2, 1991), Lorain App. No. 90CA004879, unreported. The trial court should consider the danger that defendants will request psychiatric evaluations solely to harass the victim, and violate the spirit of rape shield law. State v. Tomlinson (1986), 33 Ohio App.3d 278; State v. Stutts, supra. Furthermore, when a party seeks to discover materials not identified in Crim.R. 16. the party should demonstrate that such evidence is potentially exculpatory and cannot be obtained by other reasonable means. Id.
In this case, the prosecution experts did not testify that the victim exhibited the symptoms of child abuse accommodation syndrome. The defense could show that the victim was fabricating by other means, such as cross-examination. The defendant's need for an expert examination did not outweigh the concerns about harassing the victim and violating the spirit of the rape shield law. The trial judge did not abuse her discretion in denying the appointment of the psychiatric expert.
Appellant's assignment of error seems to state that the trial court did not permit appellant's expert witness to testify. The trial court made no such ruling. Additionally, appellant did not proffer any expert testimony. See State v. Keenan (1998), 81 Ohio St.3d 133,146.
Accordingly, this assignment of error is overruled.
 II.
Appellant's second assignment of error states:
 THE TRIAL COURT ERRED BY OVERRULING DEFENDANT-APPELLANT'S REQUEST TO CROSS-EXAMINE THE NAMED VICTIM REGARDING OTHER ALLEGATIONS OF RAPE MADE BY THE NAMED VICTIM WHICH DID NOT INVOLVE DEFENDANT-APPELLANT OR SEXUAL ACTIVITY.
The following testimony occurred outside of the presence of the jury. Claudia Kirby testified that Nadia said she was sexually abused when she was ten by her half-sister's father, Andre. Nadia testified that she was sexually abused by Andre Crawford. Appellant's attorney stated Andre Crawford would testify that he did not sexually abuse Nadia.
Dr. Ford's medical report stated that Nadia said that appellant sexually abused his daughter, Elgina. Appellant's attorney stated that Elgina would testify that she was not sexually abused by appellant and she never told Nadia that she was so abused. Nadia testified on voir dire that she heard her mother accuse appellant of having sex with Elgina and appellant did not deny the allegation. The trial court ruled that appellant could not cross-examine Dr. Ford or Nadia concerning these other allegations of abuse.
Cross-examination of a rape victim concerning prior false allegations of sexual abuse may be permitted in the discretion of the trial court, if the defendant shows the allegations were clearly false and no sexual activity took place. State v. Boggs, (1992),63 Ohio St.3d 418, 421. If sexual activity, consensual or not, took place, the rape shield law would prohibit cross-examination on that issue. Id. In this case, appellant did not prove Nadia's allegation that Andre molested her was clearly false.
Appellant asserted that Nadia made a false accusation that appellant had sex with Elgina. Appellant was unable to show that Nadia's accusation was clearly probative of Nadia's untruthfulness.See Boggs, supra; Evid.R. 608(B). Nadia said she based her allegation on her mother's statements, and there was no evidence her mother did not make these statements. The trial court did not err in excluding cross-examination as to these accusations by the victim.
Accordingly, this assignment of error is overruled.
 III.
Appellant's third assignment of error states:
 THE TRIAL COURT ERRED IN ALLOWING HEARSAY TESTIMONY REGARDING THE ALLEGATIONS MADE BY THE NAMED VICTIM TO OTHERS.
Appellant asserts that social workers Sandra Draper and Claudia Kirby improperly testified concerning statements Nadia made to them. Ms. Draper did not testify as to any statements Nadia made to her. Ms. Kirby was treating Nadia for depression. Statements made to a social worker for the purpose of psychological diagnosis and treatment are admissible under Evid.R. 803(4), as an exception to the hearsay rule. See State v. Dever (1992), 64 Ohio St.3d 401;State v. Vaughn (1995), 106 Ohio App.3d 775, 780; State v. Kelly
(1994), 93 Ohio App.3d 257; State v. Shepherd (July 1, 1993), Cuyahoga App. No. 62894, unreported. The purpose of the examination must be medical treatment, and not to gather evidence against the accused. Vaughn, supra. Nadia made the disclosures to Mrs. Kirby for the purpose of psychological treatment. Although some of the disclosures were made when Mrs. Kirby prepared Nadia for trial, these disclosures were repeats of previous disclosures. If any error occurred, it was harmless. See Crim. R. 52.
Accordingly, this assignment of error is overruled.
 IV.
Appellant's fourth assignment of error states:
 THE COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S PROPOSED JURY INSTRUCTIONS.
Appellant asserts that the jury instruction on reasonable doubt was constitutionally defective because it did not convey the concept of evidentiary certainty. It is improper to instruct the jury that "moral certainty" rather than evidentiary certainty is required to find someone guilty beyond a reasonable doubt. Cage v. Louisiana
(1990), 498 U.S. 39, 111 S. Ct. 328, 112 L.Ed.2d 339. The jury instruction here did not state that moral certainty was required, but stated:
. . . reasonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced of the truth of the charge.
The jury instruction essentially stated that evidentiary certainty, not moral certainty, was required.
Appellant objected to the court's charge that circumstantial and direct evidence possess the same probative value. Appellant requested an instruction which said, ". . . if circumstantial evidence is consistent with both guilt and innocence, the conflict must be resolved in favor of the defendant . . ."
There is no requirement that the circumstantial evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259,273. The trial court's instructions were correct. See Id.
Accordingly, this assignment of error is overruled.
 V.
Appellant's fifth assignment of error states:
 REVERSIBLE ERROR OCCURRED AT TRIAL SINCE THE JURY'S VERDICT WAS AGAINST BOTH THE SUFFICIENCY AND WEIGHT OF THE EVIDENCE.
When reviewing a challenge to the sufficiency of evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 520, State v. Jenks (1991), 61 Ohio St.3d 259. The testimony of Nadia, Dr. Ford and Claudia Kirby were sufficient for the jury to find the essential elements of three counts of rape, R.C. 2907.02 and one count of gross sexual imposition, R.C. 2907.05.
The evidence was sufficient to find forcible rape. When an adult acting in a parental role rapes a young child, the force need not be explicit, but can be subtle and psychological. State v.Eskridge (1988), 38 Ohio St.3d 56. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established. Id. Nadia testified that she was afraid of appellant because she saw appellant hit her mother. On several occasions, appellant grabbed her and put her on top of him, which amounted to physical constraint. See Id. Thus, there was sufficient evidence that a forcible rape occurred.
In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983),20 Ohio App.3d 172, citing Tibbs v. Florida (1982),457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying.State v. Mattison (1985), 23 Ohio App.3d 10. The credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. State v. Antill (1964), 176 Ohio St. 61,State v. DeHass (1967), 10 Ohio St.2d 230.
Nadia's testimony that the abuse sometimes hurt contradicted her statement to Dr. Ford that it did not hurt. Nadia explained that her statement to Mrs. Hagy that the abuse ended when she was seven was a misstatement. Nadia said her grandmother was the first one to ask if Elgin abused her, but then said that she was the one who first raised the subject. Aside from these contradictions, Nadia's testimony was consistent. It was supported by the testimony of Dr. Ford and Claudia Kirby. Nadia was able to describe the abuse in detail as to time, location and what happened.
The lack of physical evidence was explained by the fact that Nadia was not physically examined until at least three months after the abuse ended. Additionally, the hymenal cleft may have been caused by sexual abuse.
The testimony of Lisa DeLuze that she only worked seven months was contradicted by the payroll officer's testimony. Lisa admitted that sometimes Elgin would babysit.
Appellant's testimony was contrary to his prior statements and in some respects incredible. The jury did not lose its way in finding that Nadia's testimony was credible, but appellant's testimony was not credible.
Accordingly, this assignment of error is overruled.
 VI.
Appellant's sixth assignment of error states:
THE TRIAL COURT ERRED DURING THE SENTENCING PHASE OF THE TRIAL BY IMPOSING CONSECUTIVE LIFE SENTENCES WITHOUT MAKING THE REQUISITE FINDINGS PURSUANT TO R.C.2929.19(B)(2)(c) AND R.C. 2929.14(E)(4).
The trial court must state on the record the reasons for imposing a consecutive sentence. R.C. 2929.19(B)(2)(c). In this case, in order to impose consecutive sentences, the trial court must have found: (1) The consecutive sentences were necessary to protect the public from future crime or to punish the offender, and (2) consecutive sentences were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct. R.C. 2929.14(E)(3).[1]
The trial court need not use the exact words of the statute, however, it must be clear from the record that the trial court made the required findings. State v. Stribling (Dec. 10, 1998), Cuyahoga App. No. 74715, unreported; State v. Veras (Jul. 8, 1999), Cuyahoga App. No. 74416, 74466, unreported. The trial court stated that the reasons for imposing the consecutive sentences were: (1) the offense occurred over a considerable period of time, (2) the indictment was only a representative sample of the number of times the child was raped by appellant, (3) appellant showed no remorse, (4) force was used and (5) serious emotional and physical harm was done to the victim. We find that it was clear from the record the court made the required findings.
Accordingly, this assignment of error is overruled.
The decision of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SPELLACY, J., AND SWEENEY. J., CONCUR.
ANN DYKE PRESIDING JUDGE
[1] Now numbered R.C. 2929.14(E)(4).
N.B. This entry is an announcement of the court's decision. See App. R. 22 (B), 22(D) and 26(A); Loc.App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App. R. 22(E) unless a motion for reconsideration with supporting brief, per App. R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App. R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).