THE STATE OF OHIO, APPELLANT, *v.* PUENTE, APPELLEE.

[Cite as State v. Puente (1982), 69 Ohio St. 2d 136.]

(No. 81-221—Decided February 10, 1982.)

*Mr. John G. Cardinal,* prosecuting attorney, *Mr. Daniel J. Herron* and *Mr. Phillip J. Cantagallo,* for appellant.

*Mr. J. Tullis Rogers, Mr. Kenneth R. Boggs* and *Mr. Thomas Hitchcock,* for appellee.

*Per Curiam.* By disqualifying people from jury service, based upon their professions, the jury commissioner did not specifically follow R. C. 2313.01 *et seq.* While R. C. 2313.12 authorizes commissioners of juries to exempt those who are statutorily entitled to exemption, a commissioner may do so only upon the request of the persons so entitled. Here, the commissioner would not place the names of those entitled to exemption in the jury wheel. Additionally, the commissioner compounded this shortcoming by not keeping a record of all proceedings before him, as required by R. C. 2313.12.

However, the failure here of the commissioner to follow the requirements of R. C. 2313.01 *et seq.* does not lead to the conclusion reached by the Court of Appeals that appellee's conviction must be reversed.

In *State* v. *Strodes* (1976), 48 Ohio St. 2d 113, at 115-116, this court stated:

"Unless prejudice to the defendant or the systematic and

intentional exclusion of a group is shown, we will not reverse a judgment because of minor and technical defects in jury-selection procedures.''

Also, R. C. 2313.41, relating to challenging an array of grand or petit jurors, states that "no indictment shall be quashed or verdict set aside for any such irregularity***if the jurors who formed the same possessed the requisite qualifications to act as jurors." See, also, *In re Appropriation* (1963), 120 Ohio App. 273.

There is nothing in the present record that leads to the conclusion that appellee was either prejudiced by the jury commissioner's failure to follow the requirements of R. C. 2313.01 *et seq.,* or that the jurors who indicted and convicted appellee were not qualified jurors. Consequently, the Court of Appeals erred in reversing appellee's conviction.

Our analysis does not end with a determination of what the Revised Code requires, for it was also argued that appellee was deprived of his constitutional right to have a jury chosen from a fair cross-section of his community.[6]

The Sixth and Fourteenth Amendments to the United States Constitution guarantee this right to criminal defendants.[7] *Duren* v. *Missouri* (1979), 439 U. S. 357; *Taylor* v. *Louisiana* (1975), 419 U. S. 522; *State* v. *Johnson* (1972), 31 Ohio St. 2d 106. To demonstrate that there has been a violation of the fair cross-section requirement, a defendant must show:

"(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren* v. *Missouri, supra,* at page 364.

---

[6] At the outset, it should be pointed out that a failure to follow state law regulating jury selection, in the absence of a violation of the fair cross-section requirement, does not result in a constitutional violation. *Anderson* v. *Casscles* (C.A. 2, 1976), 531 F. 2d 682.

[7] Although the federal constitution does not require grand juries, when a state elects to use a grand jury, it must be drawn from a fair cross-section of the community. *Carter* v. *Jury Commission* (1970), 396 U. S. 320; *Cobbs* v. *Robinson* (C.A. 2, 1975), 528 F. 2d 1331, certiorari denied 424 U. S. 947.

Here, appellee argues that the exclusion of doctors, dentists and lawyers from the array of jurors constituted the exclusion of a distinctive group. We disagree.

In determining whether a group excluded from jury service is a distinctive one, courts have looked to community prejudices toward the group. *E.g., Hernandez* v. *Texas* (1954), 347 U. S. 475; and *Quadra* v. *Superior Court* (N.D. Cal. 1974), 378 F. Supp. 605. There is nothing in the record to show that there are community prejudices against doctors, dentists and lawyers so that they would constitute a distinctive group. See *Cobbs* v. *Robinson* (C.A. 2, 1975), 528 F. 2d 1331, certiorari denied 424 U. S. 947. Therefore, appellee's constitutional challenge is without merit.

Parenthetically, yet with great emphasis, we wish to state that just because failure to follow R. C. 2313.01 *et seq.* will not, of itself, result in a reversal, does not mean that these practices should be countenanced by the Courts of Common Pleas. Jury commissioners are appointed by the judges of the Courts of Common Pleas in each county and hold office at the pleasure of the judges. R. C. 2313.01. This being so, the judges should give their employees guidance and direction to insure that the laws relating to the selection of jurors are scrupulously followed. Judges should call attention to the fact that R. C. Chapter 2313 contemplates a random selection of jurors from all sections of each county. See R. C. 2313.08. It is only when these random procedures are followed that the criminal justice system will be insulated from challenges such as the present one. Cf. *State* v. *Ballard* (1981), 66 Ohio St. 2d 473, and *State* v. *Sturm* (1981), 66 Ohio St. 2d 483.

Additionally, the failure to follow the state statutes may result in unintentional violations of the fair cross-section requirement. See *Smith* v. *Yeager* (C.A. 3, 1972), 465 F. 2d 272, certiorari denied 409 U. S. 1076.

Having found no prejudice to the appellee in the jury commissioner's failure to strictly follow R. C. 2313.01 *et seq.,* we hereby reverse the judgment of the Court of Appeals.

*Judgment reversed.*

LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

CELEBREZZE, C. J., W. BROWN and SWEENEY, JJ., dissent.

CELEBREZZE, C. J., dissenting. The critical issue in this case is the legality of the Ashtabula County jury commissioner's informal, *ad hoc,* "key man" juror selection procedure, a practice that has been totally banned at the federal level. Since I believe that the jury commissioner's actions violated the primary goals of R. C. Chapter 2313—insuring random selection of jurors from a cross-section of the community and affording all citizens the opportunity to be considered for jury service—I respectfully dissent.

The jury commissioner's "key man" system works as follows: the commissioner consults with people who, in his estimation, are "prominent" citizens of the community. These "prominent" citizens, in turn, recommend people with "good reputations" to the commissioner for service. As the commissioner stated: "the names that *we select* are typed and put on a ticket, and those names that *we select* go into the jury wheel." (Emphasis added.) Evidently, approximately 75 percent of all jurors called for service in Ashtabula County are selected in this manner.

Although the majority opinion amply catalogs the litany of the jury commissioner's statutory violations, his violation of R. C. 2313.12 is clearly the most serious infraction. R. C. 2313.12 provides:

"The exemptions of jurors shall be such as are prescribed by sections 2313.01 to 2313.46, inclusive, of the Revised Code, and the general statutes of the state. The commissioners of jurors alone shall decide upon their qualifications and exemptions up until the time of notice for service, except as otherwise expressly provided in such sections; but the court may review and decide upon their qualifications and exemptions upon a written application and satisfactory legal proof at any time after they are notified and attend. The commissioners, upon request, shall issue to a person entitled to an exemption a certificate of that fact, which shall exempt the person to whom it is granted from jury duty during the time specified therein. *Said commissioners shall keep a record of all proceedings before them or in their office, and of all persons exempted and*

*the time and reasons for such exemptions."* (Emphasis added.)

In the case at bar, there is no record of what people were excluded from service by the jury commissioner, the number of people excluded, or the reasons for that exclusion. R. C. 2313.12 was specifically designed to curb the unchecked, unbridled discretion of the jury commissioner in the jury selection process. As the Comment to R. C. 2313.12 provides:

"This section safeguards against abuse of discretion by commissioners, by providing for a review by the courts pertaining to such qualifications and exemptions, but it reduces to a minimum the duty of the courts to pass upon exemptions generally."

Consequently, the jury commissioner's failure to follow R. C. Chapter 2313 and the resultant lack of documentation preclude any meaningful judicial review of whether any cognizable, economic, social, religious, racial, sexual, political or geographical group was systematically excluded from grand or petit juries in Ashtabula County.

Controlling precedent of the United States Supreme Court indicates that appellee should not be required to demonstrate actual prejudice in order to prevail in a juror selection challenge. This is a burden that could never be met. As the court stated in *Peters* v. *Kiff* (1972), 407 U. S. 493, 504:

"It is in the nature of the practices here challenged that proof of actual harm, or lack of harm, is virtually impossible to adduce. For there is no way to determine what jury would have been selected under a constitutionally valid selection system, or how that jury would have decided the case. Consequently, it is necessary to decide on principle which side shall suffer the consequences of unavoidable uncertainty. See *Speiser* v. *Randall*, 357 U. S. 513, 525-526 (1958); *In re Winship*, 397 U. S. 358, 370-373 (1970) (Harlan, J., concurring). In light of the great potential for harm latent in an unconstitutional jury-selection system, and the strong interest of the criminal defendant in avoiding that harm, any doubt should be resolved in favor of giving the opportunity for challenging the jury to too many defendants, rather than giving it to too few."

See, also, *Fay* v. *New York* (1947), 332 U. S. 261 (proving prejudice in the juror selection process is improbable).

As the majority correctly points out, this court has ruled that:

"Unless prejudice to the defendant or the systematic and intentional exclusion of a group is shown, we will not reverse a judgment because of *minor* and *technical defects* in jury-selection procedures." (Emphasis added.) *State* v. *Strodes* (1976), 48 Ohio St. 2d 113, at pages 115-116.

The case *sub judice* is readily distinguishable from *State* v. *Strodes, supra,* because: (1) the lack of R. C. 2313.12 records prevents us from determining whether a group has been systematically and intentionally excluded from jury service and (2) a rampant, ongoing disregard for the juror selection statutes does not constitute, in my judgment, a minor, technical defect.

The majority opinion, while conceding that: (1) the jury commissioner committed statutory violations and (2) these practices should not be countenanced, fails to impose the sanctions and grant the remedies which exist to secure compliance with R. C. Chapter 2313. I must ask my colleagues in the majority, then, what good it does to have these juror selection procedures in the first place if this court is not going to enforce them?

The right to a trial by jury in criminal cases is a right that is fundamental to the American scheme of justice and must be recognized by the states as part of their obligation to extend due process of law to all persons within their jurisdiction. See *Duncan* v. *Louisiana* (1968), 391 U. S. 145. See, generally, *Ham* v. *South Carolina* (1973), 409 U. S. 524. The right to trial by jury, with its roots in the Magna Carta, was planted in America by the English colonists. The King of England's interference with the right to a jury trial was one of the underlying causes of the American Revolution. To now have the majority dismiss this precious right in such a cursory manner and condone—instead of condemn—the actions of the jury commissioner and his self-appointed helpers betrays our constitutional heritage.

As the court ruled in *State* v. *Strodes, supra,* a defendant is entitled to a jury panel selected by the *best* method that thoughtful individuals, who are cognizant of the practicalities of selection and the inherent problems involved therein, have

been able to develop. The informal, *ad hoc,* "key man" system employed in Ashtabula County is not, in my estimation, the *best* method of selecting jurors.

Accordingly, for all the foregoing reasons, I would affirm the judgment of the Court of Appeals.

W. BROWN and SWEENEY, JJ., concur in the foregoing dissenting opinion.