The STATE of Ohio, Appellee,

v.

ASBERRY, Appellant.

[Cite as *State v. Asberry* (1989), 64 Ohio App.3d 314.]

Court of Appeals of Ohio,
Stark County.

No. CA–7714.

Decided Sept. 18, 1989.

*Robert D. Horowitz,* Prosecuting Attorney, and *Ronald Mark Caldwell,* for appellee.

*Ralph S. Lacki,* for appellant.

Gwin, Judge.

Defendant-appellant, Catherine L. Asberry, appeals from her conviction and sentence entered by the Court of Common Pleas of Stark County, Ohio, after a jury found appellant guilty of voluntary manslaughter and a firearm specification.

Evidence at the trial painted the following picture:

Appellant had been married to Ronnie Asberry for approximately eight years. During this time, Ronnie Asberry had been abusive toward appellant and their children and was an unfaithful husband. On June 8, 1988, at approximately 12:00 p.m., appellant arrived in front of the home of Ronnie Asberry's girlfriend, Phyllis Jones.

According to Phyllis Jones, appellant was seated in her car while Ronnie Asberry stood on Jones' porch. Appellant then told Ronnie Asberry, "I'm going to kill you, Ronnie." Ronnie Asberry then walked to the edge of the porch and stated, "Well, Cat [Catherine], if you're going to kill me, just kill me." Appellant then fired a single fatal shot into Ronnie Asberry's chest.

Appellant was indicted for the murder of Ronnie Asberry under R.C. 2903.02 and for a gun specification under R.C. 2923.11. The jury returned a verdict of guilty on the lesser included offense of voluntary manslaughter under R.C. 2903.03(A) and guilty on the gun specification.

Appellant now raises the following assignments of error:

"Assignment of Error Number One

"The judgment of conviction by the trial court and verdict of the jury was [*sic*] against the manifest weight of the evidence.

"Assignment of Error Number Two

"The trial court erred in failing to grant defendant's motion for a psychologist to examine the defendant and aid in the preparation of the defense.

"Assignment of Error Number Three

"The jury venire in defendant's case did not meet constitutional muster, and did not constitute a representative cross-section of the community as required by the Sixth and Fourteenth Amendments of the United States Constitution."

I

In her first assignment of error, appellant argues that her conviction was against the manifest weight of the evidence.

R.C. 2903.03(A) defines voluntary manslaughter as:

"No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."

When considering an attack on the sufficiency of the evidence, the power of our review is limited to determining whether there was sufficient evidence presented "which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Atkins v. State* (1926), 115 Ohio St.

542, 546, 155 N.E. 189, 190; *State v. Sorgee* (1978), 54 Ohio St.2d 464, 465, 8 O.O.3d 452, 452–453, 377 N.E.2d 782, 783. Therefore, we "will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132.

We find that there was sufficient evidence presented to the jury which would convince them that appellant was guilty of voluntary manslaughter beyond a reasonable doubt.

Therefore, appellant's first assignment of error is without merit and hereby overruled.

## II

■ Appellant, an indigent, in her second assignment of error, contends that the trial court's refusal to appoint a psychiatric expert to aid in her defense constituted reversible error.

Two hearings were held on appellant's motion for appointment of a psychiatric expert. Following both hearings, the trial court overruled appellant's motion because:

"There are no underlying facts to justify the appointment of an expert for the defense for the purposes stated by the defense. * * *

"There is no justification that the jury will need this type of assistance in determining the self-defense issue. * * * *"

The trial court based its decision on *Ake v. Oklahoma* (1985), 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53, and *State v. Hix* (1988), 38 Ohio St.3d 129, 527 N.E.2d 784, certiorari denied (1988), 488 U.S. 983, 109 S.Ct. 535, 102 L.Ed.2d 566. Although *Hix* and *Ake* involved the defense of insanity, whereas the case at bar does not, they present a good starting point. In *Ake,* the court held that "when a defendant * * * [makes] a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the [United States] Constitution requires that a state provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Ake, supra,* 470 U.S. at 74, 105 S.Ct. at 1091–1092, 84 L.Ed.2d at 60. However, as our Supreme Court pointed out in *Hix,* "the United States Supreme Court did not say how a system of granting psychiatric evaluations should be implemented. Instead, the court left ' * * * to the states the decision on how to implement this right.' " *Hix, supra,* 38 Ohio St.3d at 131, 527 N.E.2d at 787, citing *Ake, supra,* 470 U.S. at 83, 105 S.Ct. at 1096, 84 L.Ed.2d at 66. Therefore, the *Hix* court held:

"A defendant does not have the right to an independent psychiatric examiner, pursuant to R.C. 2945.39(C), unless the trial court has ordered more than one psychiatric evaluation *and* the trial court has refused to appoint an examiner recommended by the defendant." (Emphasis *sic*.) *Hix, supra*, at the syllabus.

However, as noted above, R.C. 2945.39(C) involves defendants who plead not guilty by reason of insanity, and here appellant made no such plea. We, therefore, look to R.C. 2929.024, which applies to the appointment of experts for indigent defendants. R.C. 2929.024, in pertinent part, reads:

"If the court determines that the defendant is indigent and that investigation services, experts, or other services are *reasonably necessary* for the proper representation of a defendant charged with aggravated murder at trial or at the sentencing hearing, the court shall authorize the defendant's counsel to obtain the necessary services for the defendant. * * * " (Emphasis added.)

In *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, certiorari denied (1985), 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643, at paragraph four of the syllabus our Supreme Court defined "reasonably necessary" as applied to R.C. 2929.024 as follows:

"R.C. 2929.024 requires the court to provide an indigent defendant with expert assistance whenever, in the sound discretion of the court, the services are reasonably necessary for the proper representation of a defendant charged with aggravated murder. The factors to consider are (1) the value of the expert assistance to the defendant's proper representation at either the guilt or sentencing phase of an aggravated murder trial; and (2) the availability of alternative devices that would fulfill the same functions as the expert assistance sought."

Furthermore, our Supreme Court shed more light on the "reasonably necessary" standard in *State v. Broom* (1988), 40 Ohio St.3d 277, 283, 533 N.E.2d 682, 691:

"The United States Supreme Court in *Ake v. Oklahoma* (1985), 470 U.S. 68 [105 S.Ct. 1087, 84 L.Ed.2d 53], held that in a capital case where the defense is one of insanity, the state must provide expert psychiatric help in order to provide the indigent defendant with the basic tools for a defense. However, in *Caldwell v. Mississippi* (1985), 472 U.S. 320 [105 S.Ct. 2633, 86 L.Ed.2d 231], the Supreme Court found no denial of due process when the state court refused to fund the hiring of various experts in a capital case. The court noted that the 'petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial * * *.' *Id.* at 323–324 [105 S.Ct. at 2636–2637, 86 L.Ed.2d at 236], fn. 1.

" '*Ake* and *Caldwell* taken together hold that a defendant must show more than a mere possibility of assistance from an expert. Rather, a defendant must show a reasonable probability that an expert would aid in his defense, and that denial of expert assistance would result in an unfair trial.' *Little v. Armontrout* (C.A.8, 1987), 835 F.2d 1240, 1244. This court's interpretation of the standard to be used under R.C. 2929.024 comports with the above constitutional standard. * * * "

We believe "[t]here is no principled way to distinguish between psychiatric and nonpsychiatric experts. The question in each case must be not what field of science or expert knowledges involved, but rather how important the scientific issue is in the case, and how much help a defense expert could have given." *Little, supra*, 835 F.2d at 1243.

We find, based on the foregoing, that the trial court did not abuse its discretion in overruling appellant's motion for a psychiatric expert. The trial court found, and we agree, that appellant failed to show a reasonable probability that such an expert would aid in her defense. Counsel for appellant offered little more than undeveloped assertions that the requested expert would be beneficial.

At the hearing on the motion, appellant's counsel stated:

"[T]he psychiatrist can testify as to the state of mind of the defendant at the time.

" * * *

"Now, obviously, this is of some importance to the defense, as this information would be of assistance in effectively representing Miss Asberry. It would also perhaps provide evidentiary matters that would be applicable to the jury and their consideration perhaps of a lesser included offense, should the evidence so warrant.

" * * *

"Obviously, I can't give the court specifics ...

" * * *

" * * * [I]n order to fully explore all the possibilities and bring forth any and all potential defenses which would be available in any factors which might be important in determining guilt or innocence of the accused, that the availability and the use of an expert is something that counsel *in any case or in all circumstances would want to use*. [Emphasis added.]

" * * *

"[W]e feel that granting funds to hire Dr. Rosewater to at least initially evaluate Miss Asberry to make a determination as to whether or not there are

factors there which are appropriate to be presented to the court, certainly is something that the court should grant. This is not to say that Dr. Rosewater's services would be utilized at trial.

"* * *

"[W]e feel that under the circumstances and nature of the charges that the court should grant our request in this regard."

There is no clear line or hard rule which defines a sufficient showing of a reasonable probability that an expert would aid a defense. Therefore, the trial court is given discretion in its determination of "reasonably necessary." From the above, we find appellant failed to demonstrate more than a mere possibility of assistance from the requested expert. There is no showing that said expert would have aided appellant's defense and, therefore, the trial court's denial of said expert was not an abuse of discretion and did not result in an unfair trial.

Additionally, appellant contends that the trial court's denial of said expert violated her Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution. However, appellant does not claim that the above-cited statutes are unconstitutional. Because of our finding that the trial court did not abuse its discretion and adhered to the law, we, therefore, have "no occasion to pass on their [statutes'] constitutionality." *Dupler v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116, 125, 18 O.O.3d 354, 360, 413 N.E.2d 1187, 1194, certiorari denied (1981), 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 973. See, also, *Cuyahoga Falls v. Bowers* (1984), 9 Ohio St.3d 148, 151, 9 OBR 438, 440, 459 N.E.2d 532, 535; *State, ex rel. Hofstetter, v. Kronk* (1969), 20 Ohio St.2d 117, 119, 49 O.O.2d 440, 441, 254 N.E.2d 15, 17 (we are not to "decide constitutional questions unless absolutely necessary").

For the foregoing reasons, appellant's second assignment of error is overruled.

### III

■ Under her final assignment of error, appellant contends that she was denied a constitutionally fair and impartial jury trial because the jury venire selected for appellant's case did not constitute a fair cross-section of the community. In support of this contention, appellant merely points to the fact that the venire for her trial included no blacks or minorities.

The United States Constitution, through the Sixth and Fourteenth Amendments, guarantees a criminal defendant the right to a fair and impartial jury chosen from a fair cross-section of the community. *Duren v. Missouri* (1979), 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579; *State v. Puente* (1982), 69 Ohio

St.2d 136, 23 O.O.3d 178, 431 N.E.2d 987, certiorari denied (1982), 457 U.S. 1109, 102 S.Ct. 2910, 73 L.Ed.2d 1318. In *State v. Strodes* (1976), 48 Ohio St.2d 113, 115, 2 O.O.3d 271, 272, 357 N.E.2d 375, 377, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1154, our Supreme Court held:

"Unless prejudice to the defendant or the systematic and intentional exclusion of a group is shown, we will not reverse a judgment because of minor and technical defects in jury selection procedures."

Appellant has not claimed that the state failed to follow Ohio's statutory procedure for selecting jurors under R.C. Chapter 2313, or that said procedure itself intentionally or systematically excludes any cognizable group. Instead, appellant argues only that the venire did not represent a fair cross-section of the community because it did not include blacks or other minorities.

In order for appellant to demonstrate that the fair cross-section requirement had been violated, appellant must show:

" '(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.' *Duren v. Missouri, supra* [439 U.S.] at page 364 [99 S.Ct. at page 668, 58 L.Ed.2d at page 587]." *State v. Puente, supra,* 69 Ohio St.2d at 138, 23 O.O.3d at 179, 431 N.E.2d at 989.

We find, after careful review of the record, appellant has failed to meet the above test, and therefore we overrule appellant's final assignment of error.

For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County is hereby affirmed.

*Judgment affirmed.*

PUTMAN, P.J., and SMART, J., concur.