OPINION
The following appeals arise from decisions of the Mahoning County Common Pleas Court sentencing Herman Hill following a conviction for theft in office and denying his motion for a new trial. For the reasons set forth below, the decisions of the trial court are affirmed.
 I. FACTS
On April 8, 1997 a special session of the Grand Jury handed down indictments against Herman Hill (appellant) charging him with one count of theft in office, a violation of R.C. 2921.41
(A)(1), and one count of tampering with evidence, a violation of R.C. 2921.12(A)(2). The events which gave rise to these charges arose between April and November 1996.
At all times relevant, appellant was a member of Youngstown City Council. As one of the responsibilities of his position as a councilman, appellant was entrusted with a city credit card in order to make various purchases for the city. During May of 1996, it came to the attention of the Clerk of Council that appellant had received a number of cash advances by way of the city credit card. When approached regarding this matter, appellant allegedly stated that the money had been used to purchase a computer for business purposes. Upon further inquiry, appellant produced what appeared to be an estimate for the purchase of a computer. It is undisputed that appellant advised the clerk to tell anyone who asked that the estimate was in fact a receipt. Based upon this documentation, the clerk paid the credit card advances in the belief that the bill was business related. While the clerk asked on numerous occasions for the serial number of the computer, such was never provided by appellant as admittedly a computer was never purchased. Appellant eventually reimbursed the money to the city in November of 1996. Appellant alleged that he advised the clerk that the advances were taken for personal use and that he intended to pay them back. Additionally, appellant stated that the estimate for the computer was provided to the clerk so she would have something to show anyone who may ask where the funds went.
As a result of this activity, the above noted indictment was handed down by the grand jury. Due to the nature of the action, a special prosecutor and visiting judge were appointed to conduct the proceedings. On April 25, 1997 appellant entered pleas of not guilty to both counts and waived his right to appear at the arraignment. Subsequently, the parties disposed of various pretrial matters. On July 8, 1997, appellant filed a motion to dismiss on the grounds that he had been selectively prosecuted. Appellant alleged that numerous council members had similarly used the city credit card for personal purposes but had never been prosecuted. Additionally, appellant filed a motion to quash the venire and dismiss the indictment due to perceived defects in the grand jury process. Prior to the disposition of these matters, the visiting judge appointed a new special prosecutor to the case. Subsequently, the visiting judge recused himself and the Ohio Supreme Court appointed a second visiting judge to the bench. All motions were denied by the newly appointed judge and the case proceeded to trial.
A trial by jury commenced on December 10, 1997. At the close of the state's case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29. Upon hearing arguments by both parties, the court granted said motion as related to count two of the indictment but denied the motion as related to count one. As such, appellant presented his case and the matter was submitted to the jury. On December 15, 1997, the jury returned a guilty verdict to the theft in office charge. Appellant was subsequently sentenced on December 26, 1997. A timely notice of appeal was filed by appellant on January 22, 1998 and his sentence was stayed.
Upon appellant's request, the court granted an extension of time to file a motion for a new trial. Said motion was filed by appellant on January 26, 1998 in which it was alleged that he was denied an impartial jury in that the venire from which the jury was chosen did not represent a fair cross-section of the public. Prior to holding a hearing on the motion for a new trial the second visiting judge recused himself in light of allegations of impartiality. As a result, the Supreme Court was required to appoint yet another visiting judge in order to conclude the pending motion. After conducting a hearing on the matter, the trial court ordered the parties to submit post-hearing briefs.
In addition to filing his brief, appellant brought to the attention of the visiting judge a judgment entry collectively executed by the Mahoning County Court of Common Pleas Judges on September 30, 1998 which assigned Mahoning County Prosecutor Paul Gains to the case at bar. Appellant argued that such a decision by the Common Pleas Court Judges was inappropriate as they no longer had jurisdiction over the case. It was appellant's position that only the visiting judge presiding over the case had authority to make decisions regarding the special prosecutor. In response to appellant's position, Prosecutor Gains filed a request with the visiting judge asking that he be granted leave to appear as counsel of record for the State of Ohio. Additionally, Prosecutor Gains filed a memorandum in opposition to the motion for a new trial. In disposing of this issue, the visiting judge granted leave to Prosecutor Gains to appear on behalf of the State of Ohio. Immediately thereafter, appellant's motion for a new trial was overruled.
A second timely notice of appeal was filed on December 3, 1998. The two appeals were consolidated by this court on January 4, 1999. Appellant raises four assignments of error on appeal.
 II. ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error reads:
 "THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT BY OVERRULING THE MOTION TO DISMISS THE INDICTMENT DUE TO DEFECTS AND IRREGULARITIES IN THE SELECTION OF THE VENIRE AND THE GRAND JURY."
Under appellant's first assignment of error, it is argued that various defects and irregularities which occurred during the selection of the venire and the grand jury were substantial enough so as to warrant a dismissal of the indictment. Appellant first argues that the notice of the drawing of the grand jury venire was not published the requisite number of days prior to the actual drawing. Next, appellant asserts that the court failed to record the excuses for the grand jurors who were excused from sitting thereon. Third, appellant contends that the court improperly permitted grand jury members to choose a foreman rather than taking this duty upon itself as provided in Crim.R. 6 (C). Fourth, appellant avers that since the grand jury foreman was improperly selected, the signature of the foreman placed on the indictment is invalid. Finally, appellant argues that the trial court erred when it failed to have the votes of the grand jurors recorded and filed with the Clerk of Courts as required by law. As a result of these perceived errors, appellant is of the belief that his initial motion to quash the venire and dismiss the indictment should have been granted. Each of appellant's allegations will be addressed separately herein.
Pursuant to appellant's first allegation, it is argued that the notice of drawing jurors was not published at least six days prior to the actual drawing as is required by law. The failure to follow the requirements for publishing is viewed as having diminished the public's ability to attend the drawing and thereby ensure its legitimacy.
R.C. 2313.20 provides the authority for the publication of notice and states as follows:
 "At least six days before the drawing of jurors under section 2313.23 of the Revised Code, the commissioners of jurors shall publish notice of the drawing, in at least one newspaper of general circulation in the county."
Despite appellant's contentions, this initial argument must fail for two reasons. First, according to appellant's own brief, the trial court journalized its entry directing the drawing of grand jurors "eight (8) days after the notice of the drawing was published in the Youngstown Vindicator." (Appellant's brief at 4). Even when the intermediate Saturday and Sunday are excluded as required by Crim.R. 45 (A), a six day interval still remains between the date of publishing and the date of the court's entry. It is unclear as to how appellant concludes that notice was published only four days before the drawing.
Even if appellant's calculations were correct and notice of the drawing was published only four days before the drawing, appellant still would not be entitled to relief. As appellee correctly indicates, absent a showing that the jurors who were actually selected were unqualified to serve, appellant is unable to establish that he was prejudiced by the failure to publish.State v. Sublett (1980), 70 Ohio App.2d 252, 254. This premise was adopted by the Ohio Supreme Court when it held that "the failure to follow the procedure set forth in R.C. 2313.01 et seq.
for the selection of grand jury venires does not ipso facto
reverse an otherwise valid conviction * * *." State v. Fulton
(1991), 57 Ohio St.3d 120, 124. See also State v. Williams
(1997), 79 Ohio St.3d 1, 16. The logic inherent in that Supreme Court pronouncement is the simple fact that our legal system stems from a core of belief that the ultimate goal in any trial, is fairness. Accordingly, any perceived deficiency in the trial process will be evaluated as to whether or not the claimed error prejudiced the defendant so as to erode or cloud the fairness of the trial itself. Against such an elementary standard, the fatal flaw of appellant's position is exposed. That is, even if we assume the validity of the existence of irregularities, we cannot correspondingly speculate that those irregularities resulted in unqualified jurors. In the case at bar not only does appellant fail to establish that any of the jurors were unqualified, he similarly fails to establish the existence of any prejudice to appellant whatsoever. As such, this assertion by appellant is without merit.
Appellant next asserts under this assignment that the trial court erred when it failed to record the excuses of grand jurors who were passed over for service on the grand jury. In particular, three individuals who were properly served were excused for reasons undisclosed in the record. Appellant relies upon the following language from R.C. 2939.02 for the proposition that the excuses of the prospective grand jurors should have been recorded:
 "* * * The first fifteen persons whose names are drawn shall constitute the grand jury, if they can be located and served by the sheriff, and if they are not excused by the court or a judge of the court. * * *."
As appellant indicates however, Crim.R. 6 (A) only requires a nine member grand jury with a maximum of five alternates. In that three prospective jurors who were served were passed over, appellant is of the belief that the excuses should have been recorded in order to maintain the appearance of propriety.
While appellant cites to R.C. 2939.02 in support of this argument, an analysis of R.C. 2313.12 is more appropriate. This section of the statute directly addresses the granting of excuses to potential jurors. Pursuant to the statute, "[t]he commissioners shall keep a record of all proceedings before them or in their office, of all persons who are granted an excuse or postponement, and of the time and reasons for the excuse * * *." Unlike R.C. 2939.02, this section specifically orders the jury commissioner to keep records of the reasons for excusing any juror from service. In light of this section, this portion of appellant's assignment of error can be disposed of much in the same way as the initial argument addressed above.
In Fulton, supra, the Ohio Supreme Court was also faced with the situation where the jury commissioners failed to properly maintain records of the time and reasons for exemptions of jurors as is required by R.C. 2313.12. As discussed previously however, the failure to follow procedures established in R.C. 2313.01 et seq. does not result in the reversal of an otherwise valid conviction unless it is established that the impaneled grand jurors were unqualified or that appellant was prejudiced by the selection process. Id. at 124. The identical result was reached by the Ohio Supreme Court in its decision in Williams, supra at 16. Furthermore, this court concluded in State v. Gerish (April 22, 1999), Mahoning App. No. 92-CA-85, unreported, that absent an explicit showing of prejudice, error would not be found in the jury commissioner's failure to record the excuses of prospective grand jurors. Id. at 46.
In the present case appellant has failed to illustrate to this court how he was prejudiced by the commissioner's lack of compliance with R.C. 2313.12. Similarly, no proof has been shown that any of the jurors who sat on the grand jury were unqualified to serve. In essence, appellant has again presented unfounded assertions to this court. In light of the clear precedent discussed herein, this position also is held to lack merit.
The third deficiency perceived by appellant is the alleged failure of the court to properly appoint a grand jury foreperson. The sole support for this proposition is Crim.R. 6 (C) which provides that "[t]he court may appoint any qualified elector or one of the jurors to be foreman and one of the jurors to be deputy foreman." Appellant indicates that rather than appointing a foreperson on its own, the trial court permitted the "grand jury members to choose the foreperson. Having failed to appoint the foreperson, appellant is of the belief that the court acted in contravention to Crim.R. 6 (C) resulting in the lack of a properly appointed foreperson to preside over the proceedings.
As appellee appropriately points out however, the rule at issue clearly employs the use of the word "may" in describing a court's authority to appoint a grand jury foreperson. This court has previously indicated in Clarke v. Board of Cty. Commrs. (July 15, 1997), Mahoning App. No. 96-CA-173, unreported, that the use of the word "may" creates a discretionary rather than an obligatory duty. Id. at 3 citing Bigler v. York Twp. (1993), 66 Ohio St.3d 98,100. As such, the court was permitted to choose one of the jurors to act as a foreman but was not mandated to do so. Furthermore, appellant once again neglects to illustrate how he was prejudiced by this conduct. As such, this court cannot speculate as to how any prejudice would be caused by permitting the members of the grand jury to choose their own foreman rather than having one appointed by the court. On these bases, this portion of appellant's assignment of error also lacks merit.
In deciding as we have on the third portion of appellant's assignment of error, we have essentially rendered the fourth argument moot. Appellant asserts that since a duly appointed foreman was not present at the proceedings in light of the court's failure to appoint such, it cannot be held that the indictment was properly signed as required by Crim.R. 6 (C). However as explained above, this court finds no error in the court's delegation of authority to the members of the grand jury as related to the choosing of a foreman. Hence, due to the fact that the indictment in the record does possess the signature of the individual selected to act a foreman, no deficiency exists.
Appellant's final attack upon the indictment and grand jury proceedings goes to the failure to record the votes of the grand jurors as related to the charges in the indictment. Appellant again relies upon Crim.R. 6 (C) which states in relevant part that [t]he foreman * * * or another person designated by him shall keep a record of the number of jurors concurring in the finding of every indictment and shall upon the return of the indictment file the record with the clerk of court, * * *." The failure to properly file the votes of the grand jurors is argued to render the indictment invalid.
This argument must also fail in light of this court's prior opinion in State v. Reese (June 2, 1999), Mahoning App. No. 98-CA-33, unreported. In Reese, this court was faced with the identical situation whereby the grand jury foreman neglected to keep a voting record and file such with the court. In resolving this issue, this court relied upon the Ohio Supreme Court's decision in Williams, supra for the proposition that an irregularity in procedure did not mandate a reversal of a conviction. Reese at 5 citing Williams at 16. As is the situation in the case at bar, appellant did not indicate how he was prejudiced by the grand jury's actions. Therefore absent a showing of prejudice, this court will similarly refuse to find reversible error in the conduct at issue. Appellant's first assignment of error is overruled in its entirety.
 III. ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment' of error reads:
 "THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT IN FAILING TO GRANT THE MOTION FOR NEW TRIAL BASED UPON DEFECTS AND IRREGULARITIES IN THE SELECTION OF THE VENIRE FROM WHICH BOTH THE GRAND AND PETIT JURIES WERE SELECTED. THESE DEFECTS RESULTED IN THE DENIAL OF THE DEFENDANT'S STATE CONSTITUTIONAL RIGHT TO INDICTMENT BY A GRAND JURY, AND HIS STATE AND FEDERAL RIGHTS TO A TRIAL BY AN IMPARTIAL JURY."
Appellant next argues that the trial court erred when it overruled his motion for a new trial. The basis for said motion was that measures taken by the jury commissioner resulted in the arbitrary and systematic exclusion of certain individuals from the venire. The exclusion of said individuals is equated by appellant to a denial of his right to an impartial jury and his right to indictment by the grand jury as provided by the U.S. and Ohio Constitutions. In essence, appellant asserts that the exclusion prevented the drawing of a venire which was composed of a fair cross-section of the community.
Those individuals who were excluded by the jury commissioner were females with pre-school aged children who indicated on a prescreening questionnaire that their occupation was that of "homemaker" or "housewife." As a result of this practice, appellant provided various data which was alleged to indicate that women, and particularly black women with pre-school aged children, were disproportionately under-represented.
 A. APPLICABLE LAW
A ruling on a motion for new trial is within the sound discretion of the trial court and may not be disturbed upon review absent a clear showing of an abuse of discretion. State v.Grant (1993), 67 Ohio St.3d 465, 480. An abuse of discretion has been viewed as more than an error of law or judgment; it connotes an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157.
In regards to the basis for appellant's motion for a new trial, in order to assure that an individual's constitutional right to a fair and impartial trial is preserved, it must be shown that the jury itself was drawn from a venire which represents a fair cross-section of the community. State v. Puente (1982), 69 Ohio St.2d 136;Taylor v. Louisiana (1975), 419 U.S. 522, 527. To establish a violation of the fair cross-section requirement, a defendant must establish that: (1) a distinctive group in the community has been excluded from the venire; (2) the representation of this group in the venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) the representation or lack thereof is due to the systematic exclusion of the group during the jury selection process. State v. Fulton (1991), 57 Ohio St.3d 120, paragraph two of the syllabus citing Duren v. Missouri
(1979), 439 U.S. 357, 364. Furthermore, "Duren and its progeny make crystal clear that a defendant's prima facie case includes all three elements listed above, * * *." U.S. v. Allen (C.A. 6, 1998), 160 F.3d 1096, 1103 citing Duren, supra at 367, 369; Fordv. Seabold (C.A. 6, 1988), 841 F.2d 677, 681.
In regards to the first prong of this test," [i]n determining whether a "group excluded from jury service is a distinctive one, courts' have looked to community prejudices towards the group."State v. Buell (1985), 29 Ohio App.3d 215, 217 quoting Puente, supra at 139. See also Hernandez v. Texas (1954), 347 U.S. 475. The Tenth Circuit Court of Appeals has provided further guidance as to what should be considered a "distinct and cognizable" group when it provided the following factors for consideration:
 "(1) the presence of some quality or attribute which `defines and limits' the group; (2) a cohesiveness of `attitudes or ideas or experiences' which distinguishes the group from the general social milieu; and (3) a `community of interest' which may not be represented by other segments of society." U.S. v. Test (C.A. 10, 1976), 550 F.2d 577, 591.
In analyzing what type of groups should be considered "distinctive" for fair cross-section determinations, courts have consistently held that when individuals are excluded upon the basis of race or gender such gives rise to a violation. U.S. v.Maxwell (C.A. 6, 1998), 160 F.3d 1071, 1075 citing Seabold, supra
at 682. However, the absence of certain age groups, e.g. young adults, from a venire has not been held to equate to the exclusion of a "distinctive group." Id. See also Test, supra. Similarly, individuals involved in certain occupations such as doctors, dentists and lawyers have been determined not to constitute distinctive groups. Puente, supra at 139 citing Cobbsv. Robinson (C.A. 2, 1975), 528 F.2d 1331.
 B. ANALYSIS
In support of his argument, appellant has provided a variety of statistical data related to Mahoning County's population. Through the use of this data, appellant attempts to establish that an improper under-representation has occurred in the venire in regards to that group of individuals which qualify as black women with pre-school age children. However despite appellant's attempts, this argument must fail for two separate reasons.
First, appellant has failed to meet the first prong of the test established in Duren, supra, that being that a "distinctive group" in the community had been excluded. While both blacks and women have previously been held to qualify as distinctive groups, black women with pre-school aged children cannot be viewed as a distinctive group of individuals. To permit such would be to drastically expand the definition of the term distinctive group well beyond the realm of what has been previously anticipated by any court addressing this issue. If appellant had desired to succeed in establishing this first prong, he should have focused solely on blacks or women.
As previously discussed, in order to establish the existence of a distinctive group, courts have traditionally looked for the existence of community prejudices towards the group in question.Buell, Puente and Hernandez, supra. There has been no showing on behalf of appellant that women with pre-school aged children, and particularly black women with pre-school aged children, suffer from any type of community prejudice.
Similarly, appellant has not provided support for the existence of the factors enumerated in Test, supra. Particularly, in order to qualify as a distinctive group the individuals thereof must possess a "community of interest" which may not be represented by other segments of society. Test at 591. This concept is consistent with the reasoning behind requiring a fair crosssection of the community in a venire. The concern is that the entire spectrum of ideas, values, etc. of the community are present in the venire so as to preserve the common sense judgment of the community. Lockhart v. McCree (1986), 476 U.S. 162, 175. Appellant has not provided any support for a finding that other members of the venire would fail to provide the same contributions to the venire process. For instance, it would seem logical that black women with children in first grade would be able to offer the same type of interests as would black women with preschoolers. If we were to logically follow appellant's reasoning, an innumerable amount of distinctive groups would arise. Jury commissioners would have to insure that it was not excluding Hispanic women who had children who were college graduates and so on. By extending the definition of a distinctive group as appellant would have this court do would serve only to eliminate the very essence of the term "distinctive."
The second and perhaps more persuasive basis for overruling appellant's second assignment of error is appellant's inability to meet the second prong of the Duren test. To establish a violation of the fair cross-section requirement, appellant must show that the representation of the group in the venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community. Fulton and Duren,supra. Even if this court were to assume arguendo that black women with preschool aged children constituted a "distinctive group," appellant has failed to establish in the record "that this group's representation in the venire is not fair and reasonable in relation to the number of such persons in the community.
Appellant provided statistic after statistic in the record which related to the composition of the population of Mahoning County. To cite just a few of said statistics, appellant indicated that there are 105,956 females in Mahoning County, 9.5% of all adult females have pre-school aged children and 17.3% of adult black females have at least one preschooler. The simple fact however is that appellant does not provide the facts which are relevant to the determination as to whether an underrepresentation occurred.
Appellant is of the mistaken belief that "females with preschool aged children are almost completely excluded from jury service." However, a review of the record reveals that this is not the case. The jury commissioner made clear through his testimony at the hearing on the motion for a new trial that all females with preschool age children were not excluded from jury service. On the contrary, the only time said individuals were excluded from the venire was if they indicated on the prescreening questionnaire that their occupation was that of "housewife" or "homemaker." If a female with pre-school aged children indicated any other occupation on the questionnaire, her name would not be excluded. Similarly, if the individual indicated that she was unemployed rather than specifying "homemaker" or "housewife," she would also be included. The basis provided by the jury commissioner for this distinction was that history had shown that individuals who were homemakers or housewives did not have a regular baby-sitter and as such were unable to serve.
Moreover, even those females who had pre-school aged children and who were homemakers were not always excluded. The jury commissioner testified that "very often" these individuals would note on the pre-screening questionnaire that they would like to serve. (New Trial Tr. at 20). In the event such a request was made, the individual would be included. Therefore, the reality of the situation is that the only individuals that were excluded by the jury commissioner were those women who had pre-school aged children, were homemakers or housewives, and who did not specifically indicate that they would like to serve. This class of people is extremely smaller than that group of people which appellant alleges were excluded. Clearly not all women with preschool aged children were excluded.
When the record is reviewed and the statistical evidence which appellant introduced is examined, it is abundantly clear that no evidence was provided indicating that the representation of the group affected was unfair or unreasonable in relation to the number of said persons in the community. Similarly, in light of the multiple conditions which had to be met before exclusion occurred and the lack of statistical evidence concerning such, it is not clear from the record that either blacks or women in general were unfairly or unreasonably represented. Having failed to meet the criteria itemized in Duren, appellant is unable to illustrate that the venire was anything other than a fair cross-section of the community. While the jury commissioner's methods could use improvement to assure that all eligible individuals are included, his actions as related to the case subjudice are not sufficiently egregious so as to warrant a reversal.[1] Therefore, this court cannot hold that the trial court abused its discretion in overruling the motion for a new trial. Appellant's second assignment of error is determined to lack merit.
 IV. ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error reads:
 "THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT BY OVERRULING HIS MOTION TO DISMISS THE INDICTMENT BASED UPON SELECTIVE PROSECUTION, IN VIOLATION OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW."
Under appellant's third assignment of error, it is alleged that the trial court should have dismissed the indictment as requested due to the fact that the state had violated his rights to due process and equal protection as are guaranteed by the U.S. and Ohio Constitutions. The basis for this premise is the belief that he was "selectively prosecuted." Appellant is of the position that other similarly situated councilpersons had used the city credit cards issued to them for personal business. Due to the fact that none of these other individuals were indicted or prosecuted, appellant believes that he was singled out. It is asserted that the state's motive for such behavior was based upon both racial grounds and a political conspiracy.
The state responds to this argument by asserting that appellant was not similarly situated with other councilpersons and thus cannot succeed on a selective prosecution claim. It is indicated that while the record does support a finding that others had used credit cards for personal business, no other members of council had provided false documentation in an attempt to avoid repayment. This factor is argued to have created the grounds for pursuing criminal charges against appellant in the case subjudice.
 A. APPLICABLE LAW
An allegation of selective prosecution is not a defense on the merits to the criminal charge but rather exists as an independent assertion that a prosecutor brought charges for reasons which are constitutionally forbidden. State v. Getsy (1998), 84 Ohio St.3d 180,203. Examples of when such an allegation may be held to be justified are those situations in which selection is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Cleveland v.Trzebuckowski (1999), 85 Ohio St.3d 524, 530 quoting Oyler v.Boles (1962), 368 U.S. 448, 45, 82 S.Ct. 501, 506, 7 L.Ed.2d 446,453.
The courts have adopted a two part test which is to be used as a standard for determining whether a defendant has a viable claim:
 "To support a defense of selective prosecution or discriminatory prosecution, a defendant bears the heavy burden of establishing, at prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, * * *." State v. Flynt (1980), 63 Ohio St.2d 132, 134 quoting United States v. Berrios
(C.A. 2, 1974), 501 F.2d 1207, 1211.
As the test illustrates, showing that another person similarly situated was not prosecuted is not sufficient to succeed on a selective prosecution claim. Said allegation must be accompanied by proof of actual discrimination due to invidious motives or bad faith.
As has been noted by both the Ohio and U.S. Supreme Courts, the burden in maintaining a selective prosecution claim is on the defendant as the prosecutor enjoys a presumption that his actions were non-discriminatory in nature. State v. Keene (1998), 81 Ohio St.3d 646,653. "In order to dispel [this] presumption * * *, a criminal defendant must present `clear evidence to the contrary.'" Id. quoting United States v. Armstrong (1996),517 U.S. 456, 463, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687, 698. The U.S. Supreme Court further noted that in its cases delineating the elements of a selective prosecution case, it has taken "great pains" in explaining that the standard is a quite demanding one.Armstrong, 134 L.Ed.2d at 698. Such is the case as this type of claim requests a court to exercise judicial power over a special province of the executive branch of government. Id. citingHeckler v. Chaney (1985), 470 U.S. 821, 832.
 B. ANALYSIS
A review of the record supports the state's position that appellant is unable to provide clear evidence to meet the first element of his prima facie case. As the state points out, appellant was not indicted merely because he had used a city credit card to obtain advances for personal use. On the contrary, evidence had been obtained that appellant had attempted to avoid repaying the funds by presenting an estimate for a computer which was purported to be for business purposes related to the city council position. While appellant asserts that he had never indicated the computer was for business purposes, the state presented evidence contradicting appellant's self-serving statements. In the presence of conflicting testimony, the trial court was well within its discretion to determine that the state's witnesses were more credible. State v. DeHass (1967),10 Ohio St.2d 230, 231. When this position is taken, it is clear that appellant is unable to show that the state failed to prosecute other similarly situated individuals for identical conduct. The record is devoid of any indication that other councilpersons had engaged in similar conduct in an attempt to avoid reimbursing the city. Therefore, appellant is unable to meet the first portion of the test as recited in Flynt, supra.
However, even if this court were to assume that appellant was able to meet the first prong of the test, appellant did not present the type of "clear evidence" which is necessary to prove invidious motive or bad faith. Keene, supra. One basis for appellant's contention of bad faith is that he was prosecuted solely on the basis of race. It is appellant's position that the state targeted a young African-American male in that he had been elected to a seat which had traditionally belonged to an Italian-American. This contention however is wholly unsupported and constitutes nothing more than an attempt to have this court make a circumstantial inference of invidious motive. Such a weak position is hardly the type of situation the U.S. Supreme Court anticipated when it outlined the painstaking efforts it had taken to show the demanding nature of the test as related to selective prosecution claims. Armstrong, supra. Appellant's position suffers further damage when one considers the information provided by the state that a number of other African-American councilpersons were investigated regarding credit card usage but were never formally charged.
Appellant's argument regarding political abuse of process must suffer a similar fate. This position is supported solely by general, unsubstantiated comments regarding a grand political conspiracy of which appellant became an innocent victim. Again, insufficient proof is of record so as to meet the demanding standard set forth by the courts.
Appellant's third assignment of error is held to lack merit.
 V. ASSIGNMENT OF ERROR NUMBER FOUR
Appellant's final assignment of error reads:
 "THE ACTIONS BY THE JUDGES OF THE MAHONING COUNTY COURT OF COMMON PLEAS WHICH REMOVED SPECIAL "PROSECUTING ATTORNEY RUGGERI AND APPOINTED THE ELECTED COUNTY PROSECUTOR WAS TAKEN WITHOUT JURISDICTION AND VOID. THE TRIAL COURT ERRED BY FAILING TO RULE ON THE DEFENDANT'S OBJECTIONS AND IN ALLOWING ATTORNEY GAINS TO ENTER AN APPEARANCE AND ACT IN THIS CASE. THE ACTIONS TAKEN BY ATTORNEY GAINS ARE A NULLITY AS A RESULT."
In appellant's final assignment of error, he takes issue with an October 1, 1998 judgment entry signed by the Common Pleas Court Judges. In the court's entry, it was determined that Mahoning County Prosecutor Paul Gains would be permitted to prosecute the case against appellant. This decision was made despite the fact that a visiting judge and special prosecutor had previously been appointed to the case. Appellant argues that this decision is void as the Common Pleas Court no longer had jurisdiction once the visiting judge was appointed to the case. Additionally, appellant finds fault in removing the special prosecutor "without the benefit of a hearing.
This assignment must be overruled as it constitutes nothing more than harmless error. Crim.R. 52 (A) states that" [a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." While the Common Pleas Court may have been divested of jurisdiction in light of the appointment of a visiting judge, the judge assigned to the case specifically granted Prosecutor Gains leave to make an appearance on behalf of the state via his November 10, 1998 judgment entry. Therefore, even if this court were to render void the October 1, 1998 entry, the action of the visiting judge was sufficient to cure the defect.
Furthermore, appellant is unable to show that any substantial right was affected as Prosecutor Gains' involvement in the case was extremely minimal. The special prosecutor appointed to the case was responsible for the entire matter in the case sub judice
as related to the trial. Upon appellant's filing of a motion for new trial, the special prosecutor filed a brief in opposition and attended the hearing held pursuant to the motion. Prosecutor Gains' involvement was solely limited to the filing of a posthearing brief addressing the merits of the motion for new trial. Said brief was filed due to the fact that no brief had been filed by the special prosecutor on behalf of the state. Although it may have been more appropriate for the visiting judge to notify the special prosecutor and provide a hearing regarding the appearance of Prosecutor Gains, no harm can be found in the visiting judge's actions. Therefore, appellant's fourth assignment of error is overruled.
Based upon the foregoing discussion, the decisions of the trial court as related to the consolidated appeals are affirmed in their entirety.
Cox, P.J., dissents; see dissenting opinion.
Donofrio, J., concurs.
APPROVED:
 ___________________________ JOSEPH J. VUKOVICK, JUDGE
[1] This court would note that by holding as we have in this case, we are in no way condoning the methods utilized by the jury commissioner. On the contrary, we would urge that in the future the jury commissioner exclude only those individuals that specifically request exclusion due to some sort of hardship. While past experience may very well support the jury commissioner's belief that women with pre-school aged children and who are housewives are unable to serve, such a decision should be made on a case by case basis. No presumptions should be made and exclusions should only be permitted when requested by the individual either in writing or in person. Such a policy will avoid any future contentions such as those at issue herein.