OPINION
{¶ 1} Timothy Humphrey is appealing from the judgment of the Clark County Common Pleas Court, which convicted him of engaging in a pattern of corrupt activity, possession of cocaine, and trafficking in cocaine and sentenced him accordingly.
 {¶ 2} Timothy Humphrey and his cousin, co-defendant Rufus Humphrey (hereinafter referred to as "Timothy" and "Rufus" for the sake of clarity), were indicted on August 27, 2001 on one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32, three counts of trafficking in drugs in violation of R.C. 2925.03, and one count of possession of cocaine in violation of R.C. 2925.11.
 {¶ 3} Timothy filed numerous pre-trial motions on September 13, 2001, including a motion for the State to reveal information regarding an unidentified informant, a motion for the State to reveal any agreement with witnesses that could influence testimony at trial, a motion for a copy of the State's file, and various discovery motions. On October 4, 2001, the trial court granted in part and denied in part the motions.
 {¶ 4} The matter was set for trial on November 11, 2001. Timothy filed a motion for continuance on November 5, 2001, asserting that the State had not provided full discovery.
 {¶ 5} On December 20, 2001, the State filed a bill of particulars.
 {¶ 6} On December 14, 2001, the State filed a motion to increase bond, alleging that Timothy's risk of flight was high because he was facing serious charges and because he had made statements that he intended to "tak[e] care of" the detective in his case. Timothy filed a memorandum contra to the State's motion on December 17, 2001 and requested a hearing on the matter. Following the hearing, the trial court granted the State's motion on December 21, 2001.
 {¶ 7} On December 26, 2001, Timothy filed a motion to dismiss all charges, asserting that the State had failed to provide discovery and he would not be able to prepare an adequate defense. He simultaneously filed a motion to compel discovery and a motion to dismiss for speedy trial violations.
 {¶ 8} The trial court overruled Timothy's motions to dismiss on January 4, 2002 and reset the trial to January 22, 2002 at Timothy's and Rufus's requests.
 {¶ 9} The trial commenced on January 22, 2002. The State produced evidence at trial demonstrating that Timothy was a drug dealer who had distributed large quantities of cocaine in Springfield, Ohio. Rufus was one of the people with whom Timothy had worked closely in distributing drugs. The Springfield Police Department began investigating Timothy and Rufus on or about May 21, 2000. Alex Williams, a confidential informant, was used to make controlled cocaine buys from both Timothy and Rufus, and he recorded several phone conversations between himself and the two suspects.
 {¶ 10} During the police investigation, both Timothy and Rufus engaged in several specific incidents of drug-related activity, working together to sell and distribute cocaine. One specific instance occurred on May 21, 2000 in Rufus's barber shop. Present at the shop were Williams, Timothy, Rufus, Leonard Dixon, and Rodney White. At that time Timothy had in his possession a gym bag containing three or four kilos of cocaine, along with two or three pounds of marijuana. With Rufus present, Timothy sold Leonard one kilo of cocaine for $26,000. Timothy also sold cocaine to White, offered to sell Williams a quarter kilo for nine thousand dollars, and gave a quantity of cocaine to Rufus.
 {¶ 11} On May 23, 2000, Williams and Timothy had a phone conversation during which Williams arranged to purchase a quantity of cocaine. On the following day, Williams and Timothy had another phone conversation during which Timothy told Williams that he was going to be out of town and that Rufus would make the sale for him. A few minutes later Rufus paged Williams. When Williams returned Rufus's call, Rufus told Williams that Timothy had spoken with him about selling some cocaine to Williams and had given him four ounces to sell. Timothy had informed Williams that the transaction would occur at Rufus's home at 522 W. Parkwood Avenue and that the price would be $1,200.
 {¶ 12} Williams proceeded to Rufus's home where he made a controlled buy of one ounce of cocaine from Rufus for $1,200. At that time, Williams observed four ounces of cocaine in Rufus's possession.
 {¶ 13} On May 30, 2000, Timothy met Williams at BW-3's Restaurant where Williams made a controlled buy of three-fourths of an ounce of cocaine for $800. This transaction was videotaped. On that occasion, Williams had attempted to purchase five ounces, but Timothy had not had that quantity available.
 {¶ 14} On June 11, 2000, Williams and Timothy had a phone conversation wherein Timothy indicated that his shipment of cocaine had arrived. Williams stated that he wanted to purchase five ounces. Timothy told Williams to contact Rufus to make his purchase, but Williams said he would only deal with Timothy. The following day, on June 12, 2000, Williams and Timothy had several phone conversations arranging the sale of five ounces of cocaine to Williams. During one of those conversations, Timothy informed Williams that he had delivered one-half kilo to Rufus earlier that morning and that he was waiting for Rufus to bring five ounces back to him so that he could make the sale to Williams. Later that day, Williams proceeded to Timothy's house, 1117 W. High Street, where he made a controlled purchase of five ounces of cocaine from Timothy for $5,200. This transaction occurred in the backyard and was videotaped.
 {¶ 15} On June 13, 2000, Williams and Timothy had a phone conversation wherein Timothy stated that his shipment had arrived and he would be selling it in one-half kilo units for $17,000 each. The following day, Williams went to Timothy's home where he observed three or four kilos of cocaine in Timothy's possession. Subsequently, on June 26, 2000, Timothy called Williams and stated that another shipment had arrived and he had fifty ounces to sell.
 {¶ 16} Following the trial, the jury convicted Timothy of all charges. He was sentenced to a prison term of eight years on count one, six years on count two, four years on count three, and eight years on count four. The trial court ordered that all terms would be served consecutively. Timothy was also fined a total amount of $65,000.
 {¶ 17} Thereafter, Timothy filed a notice of appeal, and he now asserts four assignments of error for our review.
 {¶ 18} Timothy's first assignment of error:
 {¶ 19} "The Trial Court Erred in Failing to Discharge Tim Humphrey Pursuant to Ohio's Speedy Trial Statute R.C. 2945.71[.]"
 {¶ 20} Timothy contends that the delays in bringing him to trial should have been charged against the State and thus his case should have been dismissed for a violation of his speedy trial rights.
 {¶ 21} The standard for reviewing claims of speedy trial violations is "whether the trial court's ruling is supported by the evidence or whether the court abused its discretion by making a finding manifestly against the weight of the evidence." State v. Stickney (Dec. 12, 1994), Montgomery App. No. 14232, citing State v. Packard (1988),52 Ohio App.3d 99, paragraph three of the syllabus, 557 N.E.2d 808. "An abuse of discretion means more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Stickney, supra, citing Huffman v. Hair Surgeon, Inc.
(1985), 19 Ohio St.3d 83, 87, 482 N.E.2d 1248. An abuse of discretion occurs when "the result [is] so palpably and grossly violative of fact and logic that it evinces not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." (Citations omitted.) Stickney, supra (citations omitted).
 {¶ 22} Under R.C. 2945.71(C)(2), a defendant against whom a felony charge is pending shall be brought to trial within 270 days after the defendant's arrest. If the defendant is held in jail in lieu of bail on the pending charge, each day shall be counted as three days. R.C.2945.71(E). R.C. 2945.72(E) provides that this time may be extended by "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[.]" Generally, when a defendant files a demand for discovery or a bill of particulars, the time between the filing of the demand and the State's providing discovery must be counted against the defendant. Statev. Brown, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159; State v.Scott (Dec. 14, 2001), Miami App. No. 2000 CA 8; State v. Benge (Apr. 24, 2000), Butler App. No. CA99-05-095, citing State v. Keith (1998),130 Ohio App.3d 456, 459, 720 N.E.2d 216, and State v. Prather (July 10, 1995), Brown App. No. CA94-08-010. The time in which a defendant must receive a speedy trial pursuant to R.C. 2945.71(C) is tolled under R.C.2945.72(E) until the State responds in a reasonably timely fashion.Benge, supra. Moreover, the speedy trial analysis must be strictly construed in favor of the defendant. State v. Pachay (1980),64 Ohio St.2d 218, 416 N.E.2d 589, 18 O.O.3d 427.
 {¶ 23} In this case, Timothy was brought to trial within the required period of time. Timothy was indicted on August 27, 2001 and arrested on August 28, 2001. He remained incarcerated through his conviction and sentence; thus, the time to trial could not exceed ninety days. Upon his arrest, time began running at a rate of three-for-one, for seventeen days, until Timothy's first set of motions filed on September 13, 2001. The trial court granted the motions in part and overruled them in part on October 4, 2001. Based upon the previously-mentioned caselaw, the filing of Timothy's motions tolled the time between September 13 and October 4.
 {¶ 24} On October 4, 2001, time began to again run at a rate of three-for-one, for fifty-three days, until November 5, 2001, when Timothy filed a motion for continuance alleging that the State had not provided full discovery. Timothy asserts that the trial court should have charged the time between this motion and the rescheduled trial date of January 22, 2002 against the State, because he was forced to file a motion for continuance due to the State's failure to provide discovery. We disagree.
 {¶ 25} The Ohio Supreme Court noted in State v. Brown, supra, ¶ 23:
 {¶ 26} "Discovery requests by a defendant divert the attention of prosecutors from preparing their case for trial, thus necessitating delay. If no tolling is permitted, a defendant could attempt to cause a speedy-trial violation by filing discovery requests just before trial. Courts could grant case-by-case exceptions but would then be in the unenviable position of deciding how close to trial is too close to request additional discovery. Further, prosecutors could be forced to make hurried responses to discovery requests to avoid violating the speedy-trial statute. We conclude that allowing a defendant's discovery requests to toll the running of the speedy-trial period is the most sensible interpretation of R.C. 2945.72(E)."
 {¶ 27} Typically, a defendant might be expected to employ Crim.R. 16(A) to compel discovery. Such a motion would toll the time from the point the motion was filed until the time the trial court rules on the motion. In this case, however, Timothy filed a motion for continuance of the November 13, 2001 trial date on November 5, 2001. The trial court granted the request and set a new trial date of January 2, 2002. According to Brown, supra, Timothy's motion operated to toll the time between the date of filing the motion for continuance and the new trial date of January 2, 2002.
 {¶ 28} Based upon this theory and the general law that a defendant's request for a continuance tolls the speedy trial statute,State v. Davis (1976), 46 Ohio St.2d 444, 448, 349 N.E.2d 315, 75 O.O.2d 498, we find that the time between the motion for continuance, filed on November 5, 2001, and the January 2, 2002 trial date should be tolled. At that point, a total of seventy days expired.
 {¶ 29} Prior to the January 2, 2002 trial date, Rufus requested a continuance. The record is unclear whether Timothy joined Rufus in this request, and therefore we will not charge that time against Timothy. Consequently, another twenty days passed before Timothy's trial commenced on January 22, 2002, however this still was within the ninety-day limit.
 {¶ 30} Based upon the above discussion, we find that the trial court did not abuse its discretion in tolling the time as mentioned, and we affirm the trial court's decision to deny Timothy's motion to dismiss based upon alleged speedy trial violations.
 {¶ 31} Timothy's second assignment of error:
 {¶ 32} "The Evidence Presented at Trial Was Insufficient As A Matter Of Law To Support A Conviction Against Tim Humphrey For Violation of R.C. 2923.32(A)(1) `A Pattern of Corrupt Activity'."
 {¶ 33} Timothy was convicted of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), which provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."
 {¶ 34} "Enterprise" is defined in R.C. 2923.31(C) as:
 {¶ 35} "An individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. `Enterprise' includes illicit as well as licit enterprises."
 {¶ 36} "Corrupt activity" as defined in R.C. 2923.31(I) includes engaging in, attempting to engage in, conspiring to engage in, or soliciting another person to engage in any violation of R.C. 2925.03 or2925.11 that is a felony of the first, second, third or fourth degree.
 {¶ 37} "Pattern of corrupt activity" is defined in R.C. 2923.31(E) as "[t]wo or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."
 {¶ 38} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492:
 {¶ 39} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 40} Timothy argues that the evidence presented by the State was insufficient to sustain his conviction for engaging in a pattern of corrupt activity because the State failed to prove the existence of an "enterprise," as there was no evidence presented to support the existence of an ongoing organization separate and distinct from the alleged pattern of corrupt activity. Specifically, Timothy asserts that there is no evidence that he engaged in predicate acts with Rufus on at least two occasions, as the bulk of the State's evidence surrounds the transactions between Williams and Rufus that did not include Timothy. Timothy contends that the record "only" contains evidence of Williams' statement that Rufus was calling on Timothy's behalf, but no direct evidence to such.
 {¶ 41} We disagree. The State's evidence clearly demonstrates that a group of persons (Timothy and Rufus) associated together for the common purpose of engaging in a course of criminal conduct by distributing cocaine in the Springfield area. Moreover, this was an ongoing organization or entity whose members functioned as a continuing unit. That is sufficient to demonstrate the existence of an "enterprise."United States v. Turkette (1981), 452 U.S. 576, 583, 101 S.Ct. 2524. Additionally, the "pattern of corrupt activity" in this case was the series of corrupt acts involving specific incidents of illegal drug activity committed by the participants in the enterprise. Id.
 {¶ 42} The evidence demonstrates that both Timothy and Rufus participated in this enterprise by continually engaging in a pattern of corrupt acts involving the possession and sale of cocaine. A specific incident of that corrupt activity occurred on May 21, 2000, inside Rufus's barber shop with Rufus present. Timothy, who was in possession of three or four kilos of cocaine, sold Leonard Dixon one kilo of cocaine for $26,000 and then offered Williams, the informant in this case, one-fourth of a kilo for $9,000. During that same incident, Timothy gave Rufus a quantity of cocaine.
 {¶ 43} Another incident of corrupt activity occurred on May 24, 2000. Timothy had provided Rufus with several ounces of cocaine to sell for him, to Williams and other individuals, while Timothy was out of town. On May 24th, Williams came to Rufus's home at which time Rufus sold him one ounce of cocaine for $1,200. Another incident of corrupt activity took place on June 12, 2000. After Timothy had provided Rufus with one-half kilo of cocaine to sell, Timothy arranged a sale of five ounces of cocaine to Williams. When Williams indicated that he would only deal with Timothy, Rufus had to return five ounces of cocaine to Timothy so he could complete the sale to Williams.
 {¶ 44} Viewing the evidence presented in this case in a light most favorable to the State, a rational trier of fact could conclude that all of the elements of engaging in a pattern of corrupt activity were proven beyond a reasonable doubt. As such, Timothy's conviction is supported by legally sufficient evidence.
 {¶ 45} The second assignment of error is overruled.
 {¶ 46} Timothy's third assignment of error:
 {¶ 47} "The Trial Court Erred By Failing To Impanel A Proper Jury And Denying Counsels' Challenge To The Venire[.]"
 {¶ 48} Timothy argues that he was denied his constitutional right to a fair and impartial jury because the jury venire did not represent a fair cross-section of the community. In particular, Timothy complains that the array of petit jurors did not include any African-Americans despite the fact that African-Americans account for approximately 26 percent of Springfield's population. Timothy also asserts a violation of R.C. 2313.12 in that a record of all proceedings before the jury commissioners was not maintained of those persons exempted.
 {¶ 49} The Sixth and Fourteenth Amendments to the United States Constitution guarantee defendants a right to have a jury chosen from a fair cross-section of their community. Duren v. Missouri (1979),439 U.S. 357, 99 S.Ct. 664; State v. Puente (1982), 69 Ohio St.2d 136,138, 431 N.E.2d 987, 23 O.O.3d 178, 179. However, this requirement of a fair cross-representation of the community need not be interpreted to mean that the array of the members of the venire consist of an exact cross-section of the community. Swain v. Alabama (1965), 380 U.S. 202,85 S.Ct. 824; State v. Wilson (1972), 30 Ohio St.2d 199, 201, 283 N.E.2d 632, 59 O.O.2d 220. Furthermore, as the Ohio Supreme Court stated in State v.Strodes (1976), 48 Ohio St.2d 113, 115-116, 357 N.E.2d 375, 2 O.O.3d 271, 271:
 {¶ 50} "Under the United States Constitution, a defendant is entitled not to a perfect cross-section of citizens for the jury panel, but only to panels selected by the best method that thoughtful men, who are cognizant of the practicalities of selection and the inherent problems involved, have been able to develop. State v. Johnson [(1972),31 Ohio St.2d 106, 285 N.E.2d 751, 60 O.O.2d 85]. * * * Unless prejudice to the defendant or the systematic and intentional exclusion of a group is shown, we will not reverse a judgment because of minor and technical defects in jury-selection procedures."
 {¶ 51} Under Duren, supra, to prove that a violation of the fair cross-section requirement has occurred, a defendant must show "(1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Id. at 364.
 {¶ 52} Regarding Duren's first prong, it is indisputable that race is a constitutionally-recognized distinctive group deserving of protection. Lockhart v. McCree (1986), 476 U.S. 162, 175, 106 S.Ct. 1758. However, as we stated in State v. Dunn (Sept. 29, 2000), Montgomery App. No. 16904, "[t]he United States Supreme Court has stated that they `impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive group in the population.'" Id., quoting Taylor v. Louisiana (1975), 419 U.S. 522, 538,95 S.Ct. 692.
 {¶ 53} Under the second prong of the Duren analysis, Timothy must demonstrate that the representation of African-Americans in the venire from which his jury was selected was not fair and reasonable in relation to the number of African-Americans in the community. This element requires Timothy to "demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement."Duren, supra, at 364. Contrary to Timothy's representation to the trial court, the 2000 United States Census figures demonstrate that the percentage of African-Americans living in Clark County is 8.9 percent, not 26 percent as he claims. Moreover, Timothy failed to provide evidence that the other panels drawn from the total voting population had consisted of a proportionately lower percentage of African-Americans than that represented in the community.
 {¶ 54} More importantly, we also find that Timothy has not fulfilled the requirements of Duren's third prong, as he failed to produce evidence that there had been any "systematic exclusion" of African-Americans from his panel.
 {¶ 55} At the commencement of trial, Timothy challenged the array of petit jurors due to an under-representation of African-Americans. In overruling that challenge, the trial court noted that it was present when the jury venire was drawn in this case. The trial court took judicial notice that the selection of the array of petit jurors was done randomly by computer program from voter registration lists and that there was no systematic exclusion of any group. Nevertheless, Timothy requested an opportunity to present evidence, particularly with respect to the 25 potential jurors who were included in the pool but did not appear in court because they had been previously excused from jury service.
 {¶ 56} Consequently, a hearing was held. The presiding judge's bailiff, Dee Gibson, testified regarding some of the reasons why people had been excused from jury service in this case: employment concerns, student, caretaker of older relative, transportation concerns, under a doctor's care, etc. Gibson indicated that potential jurors called for duty communicate to the court their request to be excused and that those requests are then acted upon orally; no written records are kept. Gibson testified that to her knowledge only one other time in the past fifteen years had an array of petit jurors failed to include any African-Americans. She also testified that nobody had been excused from jury service in this case because of race, nor was she aware of any case where that had occurred. At the conclusion of the hearing, the trial court overruled Timothy's challenge to the array of petit jurors.
 {¶ 57} However, even if we were to find that African-Americans had been excluded from Timothy's panel, that is not the standard underDuren, supra. The Duren court focused on exclusions within the entire jury selection process, and not necessarily only on one panel. Id. TheDuren Court also stated that systematic exclusion means that the exclusion of the group is "inherent in the particular jury-selection process utilized." Id. at 366.
 {¶ 58} In this case, Timothy has produced no evidence of error by bias resulting in the intentional and systematic exclusion of African-Americans from his jury selection process. We therefore find that Timothy failed to demonstrate that African-Americans were systematically excluded in the jury selection process.
 {¶ 59} Additionally, we note that the failure of the jury commissioners for the Clark County Common Pleas Court to keep records of all persons who are excused from jury service, including the time of and reason for the excuse, violates R.C. 2313.12. Nevertheless, absent a showing that Timothy has been prejudiced thereby, minor or technical defects in jury selection will not result in reversal of the trial court's judgment. State v. Puente, supra.
 {¶ 60} As such, Timothy's third assignment of error is meritless.
 {¶ 61} Timothy's fourth assignment of error:
 {¶ 62} "The Trial Court Erred By Failing To Grant The Motion To Sever[.]"
 {¶ 63} Under Crim.R. 8(B), two defendants can be jointly indicted and tried for a non-capital offense as long as "they are alleged to have participated in the same act or transaction * * * or in the same course of criminal conduct." However, under Crim.R. 14, "if it appears that a defendant or the state is prejudiced by a joinder of * * * defendants * * * the court shall grant a severance of defendants, or provide such other relief as justice requires."
 {¶ 64} The law favors the joinder of co-defendants and the avoidance of multiple trials because it, "conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." State v. Daniels (1993), 92 Ohio App.3d 473, 636 N.E.2d 336. As a result, a defendant claiming relief from joinder bears the initial burden of demonstrating that he will be materially prejudiced by the joinder. State v. Torres (1981), 66 Ohio St.2d 340, 421 N.E.2d 1288, 20 O.O.3d 313; State v. Brooks (1989), 44 Ohio St.3d 185, 542 N.E.2d 636. Absent a clear showing of abuse of discretion, a trial court's decision regarding severance will not be disturbed. Torres at 340. An abuse of discretion means more than just an error of law or judgment, it implies an arbitrary, unreasonable, and unconscionable attitude on the part of the trial court. State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.
 {¶ 65} In this case, Timothy contends the trial court abused its discretion in denying the severance motion because his defense was compromised by the presentation of Rufus's defense. Timothy also argues that he elected to testify at trial and was fearful of providing all of his testimony, as it might have created "an atmosphere of combatants between himself and Rufus." Finally, Timothy asserts that, because there was no evidence of a pattern of corrupt activity, there was no "rational basis" for trying the cases together.
 {¶ 66} Just prior to the State playing the audiotapes of the recorded phone conversation to the jury, the co-defendants renewed jointly their motion for severance. Timothy and Rufus argued that theirSixth Amendment right of confrontation was violated because the playing of the cassette tapes contained a statement by Timothy implicating Rufus in illegal drug activity, which created a problem under Bruton v.United States (1968), 391 U.S. 123, 88 S.Ct. 1620.
 {¶ 67} We disagree. A Bruton problem arises in a joint trial of two or more defendants when the trial court admits into evidence a confession or statement by a non-testifying defendant that implicates other defendants in criminal activity. That is not the case here. Instead, Timothy, the declarant of the statement, implicated Rufus in illegal drug activity. Timothy testified at trial and was subject to cross-examination. Accordingly, we find no violation of Timothy's confrontation rights.
 {¶ 68} There is no evidence suggesting that Timothy and Rufus intended to present, or did present at trial, antagonistic defenses. Antagonistic defenses exist when each defendant is trying to exculpate himself and inculpate his co-defendant. Antagonistic defenses can be so prejudicial that they can deny a co-defendant a fair trial. State v.Daniels, supra. Nonetheless, severance is not mandated whenever co-defendants have conflicting defenses. Zafiro v. United States (1993),506 U.S. 534, 113 S.Ct. 933. Additionally, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. See, e.g.Tifford v. Wainwright, 588 F.2d 954 (CA5 1979).
 {¶ 69} Finally, we disagree with Timothy's assertion that there was no evidence of a pattern of corrupt activity and thus no "rational basis" to try the cases together. As we have already addressed supra, there was evidence that Timothy and Rufus had engaged in a pattern of corrupt activity. Accordingly, there is evidence in the record that Timothy and Rufus participated in a pattern of corrupt activity, and we find no merit in Timothy's assertion that there was no "rational basis" to try his case with Rufus's.
 {¶ 70} Accordingly, we overrule Timothy's fourth assignment of error.
 {¶ 71} The judgment of the trial court is affirmed.
FAIN, P.J. and GRADY, J., concur.